■ Although the office buildings are used by many employees, each is there by a specific invitation. The general public is not invited to use the property nor does it.

Subject to the foregoing modification of the trial judge's method of analysis, we affirm substantially for the reasons he gave. Defendants' claim of a common-law right to enter plaintiff's property to distribute union literature is clearly without merit. *R.* 2:11–3(e)(1)(E).

Affirmed.

LEONARD BORROMEO, CLAIMANT-APPELLANT, v. BOARD OF REVIEW, ETC., AND ROAD MACHINERY, INC., RESPONDENTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 2, 1984—Decided October 30, 1984.

Before Judges PRESSLER, BRODY and HAVEY.

*Leonard Borromeo* filed a letter brief *pro se.*

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent Board of Review (*Deborah T. Poritz,* Deputy Attorney General, of counsel; *Antoinette Bennett,* Deputy Attorney General, on the brief).

No brief was filed by respondent Luxor Lighting Products, Inc.

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Claimant Leonard Borromeo appeals from a decision of the Appeal Tribunal, affirmed by the Board of Review, requiring him to repay $1,150 he had received in unemployment compensation benefits for the period from December 8, 1982 to February 12, 1983. We reverse.

Claimant had been employed for some seven years by Road Machinery, Inc., as an inventory control specialist prior to his lay-off on August 31, 1982. He was then earning about $380 per week. He filed a claim for unemployment benefits several days later and received his full benefit rate of $145 per week through the first week of December, having been totally unemployed during that period.

On December 4, 1982 claimant obtained employment as a commission salesman for Luxor Lighting Products. He testified before the Appeal Tribunal that he worked between 30 and 40 hours at this employment. His weekly routine was to spend 4 or 5 hours a day, 4 days a week, on the road attempting to sell the product and to spend several hours, 5 days a week, making telephone calls seeking business. He also testified that during the period of his employment by Luxor Lighting, he was seeking other employment and, in fact, had applied for an inside job to the prospective buyers of the product he was trying to sell.

His salesman's employment was indeed singularly unsuccessful. In the three months of its duration, he succeeded in earning weekly commissions in excess of his weekly benefit rate only once. His total earnings for the period in which he received $1,150 in benefits was $495. Significantly, he reported this job to his local office and kept the office apprised each week of his earnings therefrom. There is no suggestion in this record that he withheld any material fact. To the contrary, he made regular and full disclosure respecting the Luxor employment.

Early in March 1983 claimant was terminated by Luxor Lighting because of its reappraisal of the "economics of the area." Several days prior to that termination, the local office redetermined claimant's benefits and reached the conclusion that he had been ineligible for benefits while employed by Luxor Lighting because that employment was full-time. The local office accordingly requested repayment, and claimant appealed to the Appeal Tribunal. The Appeal Tribunal affirmed the repayment order on the ground that claimant was ineligible for benefits during the period of his Luxor Lighting employment because he was then "fully employed, working 30–40 hours per week." While neither the Appeal Tribunal decision nor the Board of Review affirmance expressly so state, it is clear that both relied on *N.J.S.A.* 43:21–19(m)(1). That section defines unemployment for purposes of entitlement to benefits as "any week during which the claimant * * * is not engaged in full-time work and with respect to which his remuneration is less than his weekly benefit rate * * *." The question raised by this appeal is whether the circumstances surrounding claimant's employment by Luxor Lighting was full-time work within the statutory intendment, disqualifying him from benefits.

The statutory definition of unemployment contains two elements, namely, that the claimant is not engaged in full-time work and that any remuneration he earns is less than his weekly benefit rate. It is true, as the State argues, that the two prongs of this definition have been construed to be conjunc-

tive with the consequence that both must be met in order for a claimant to be deemed unemployed. This is the holding of *Battaglia v. Board of Review,* 14 *N.J.Super.* 24 (App.Div.1951), and *Caldwell v. Div. of Unemployment Dis. Ins.,* 145 *N.J.Super.* 206 (App.Div.1976). Both of these opinions focus, however, on the remuneration condition rather than on the full-time employment condition. *Battaglia* held that the payment by an employer of vacation pay for weeks in which the employee did not work and received no other income constituted remuneration disqualifying the employee from eligibility for benefits. And *Caldwell* held that back-pay paid to an employee in settlement of a termination dispute. constituted remuneration for the period to which it was referable even though the employee was not then working. No reported decision of this State has been brought to our attention in which the import of the full-time employment component of the definition was considered in circumstances, as here, in which the remuneration for the work effort is less than the benefit rate. Thus, while it is clear that the Legislature did not intend an unemployed worker receiving remuneration in excess of the weekly benefit rate also to receive unemployment compensation benefits, the issue here is whether it intended a "full-time" worker whose remuneration is less than the weekly benefit rate to receive partial benefits.

The meaning which the Legislature intended to ascribe to the "full-time work" component of the unemployment definition is not readily apparent in view of its failure to have accorded any specific definition to that term. Our review of the Unemployment Compensation Law, *N.J.S.A.* 43:21–1, *et seq.,* and its implementing regulations satisfies us, however, that the real distinction between full employment and partial employment was not intended to be based on the quantum of hours worked but rather on the amount of remuneration earned.

■ As a matter of custom and usage, it is clear that the number of hours one must work in order to be deemed a full-time worker depends on the context in which that determi-

nation is to be made, on the nature of each specific employment, and on the contractual definitions, if any, governing the employment relationship. The relative rather than absolute meaning of full-time work has indeed been recognized in the law's implementing regulations. *See, e.g., N.J.A.C.* 12:17–3.1(a)(1), defining the benefit week of a partially employed person in terms of a week in which he has worked "less than his normal customary full-time hours for such employer."

The arbitrariness of attempting to define the "full time work" component of *N.J.S.A.* 43:21–19(m)(1) in terms of a single hourly standard is well-illustrated by the facts of this case. The Board of Review found that claimant was "fully employed" because he was working between 30 and 40 hours each week. Would he have been partially employed and thus eligible for benefits rather than fully employed and ineligible had he worked not more than 30 hours a week or 31 or 32 or 33 hours a week or 29 hours a week or 29 hours and 59 minutes a week? The point, of course, is that the Legislature has not drawn a line based on number of work hours. The Appeal Tribunal drew a vague and uncertain line here encompassing a ten-hour spread. We find no justification therefor as a matter either of common sense or statutory imperative.

In our view the meaning of the term "full-time work" becomes understandable when juxtaposed against the statutory scheme of total and partial unemployment. Partial unemployment is defined throughout the statute and the regulations in terms of the amount of remuneration. Thus, *N.J.A.C.* 12:17–3.-1, following *N.J.S.A.* 43:21–19(m)(2), defines a week of partial unemployment as

a week in which an individual performs some services and/or earns remuneration which does not exceed his weekly benefit rate plus 20 per cent of such rate or $5.00, whichever is the greater.

And *see N.J.S.A.* 43:21–3; *N.J.A.C.* 12:17–4.2. And *cf. N.J.S.A.* 43:21–20.1, affording compensation eligibility to an employee who "performs less than full-time work" provided he is "available for enough weekly hours, or amount, of such work to be

able to earn remuneration equivalent to his weekly benefit amount."

We cannot determine with certainty the reason for the Legislature's two-prong definition of *N.J.S.A.* 43:21–19(m)(1) since the second prong, namely, remuneration in an amount less than the weekly benefit rate, would seem to suffice. The State urges that the reason for the full-time work component lies in *N.J.S.A.* 43:21–4(c) and 43:21–5(c), which condition eligibility for benefits on both availability for work and the active seeking of work. Its argument is that one who is working "full time" can fulfill neither condition. We disagree. Working for 30 or 40 hours a week at a job which one is free to leave at any time does not necessarily preclude either the simultaneous search for other work or one's ability to accept other work. Whether one is free to do so depends on the nature and timing of the work commitment. There is no reason here to discredit this claimant's testimony that he used his unproductive sales job as a vehicle to seek more appropriate employment, and indeed, no finding was ever made that he was not both available for and seeking other work. The fact of a claimant's unavailability for work and failure to seek work, except as otherwise statutorily excused, is always independent cause for disqualification. But the holding of a "full-time" job does not in every case *ipso facto* compel the conclusion that that basis of disqualification exists. It did not in fact do so here.

A possible explanation of the "full-time" work proviso may be a legislatively intended reference to the minimum wage standards of *N.J.S.A.* 34:11–56a and, more particularly, *N.J.S.A.* 34:11–56a4, which generally requires the minimum wage to be paid for the first 40 hours per week, and time and a half at the employer's actual wage thereafter.[1] It may well be that a 40-hour work week compensated at the minimum wage was

---

[1] We recognize that outside salesmen are exempt from the minimum wage act. We refer to its basic provisions only for guidance in attempting to construe the legislative intent expressed by *N.J.S.A.* 43:21–19(m).

intended by the legislature to constitute "full-time work" which would disqualify an employee from the receipt of unemployment compensation benefits even if that compensation did not equal his benefit rate. If that was the statutory intention, this claimant would not be barred thereby since, as found by the Appeal Tribunal, he did not work a 40-hour week.

In view of the statutory failure to define "full-time work" and in view of the failure of the State to suggest any standard which might be reasonably applied to this case consistent with the scheme and remedial purpose of the Unemployment Compensation Law, we are constrained to conclude that under the circumstances here claimant's situation met the test of unemployment.[2]

We add only that legislative clarification of *N.J.S.A.* 43:21–19(m) is clearly required, and it is hoped, will be forthcoming.

The order requiring repayment of benefits is reversed.

---

[2]To the extent that *Trujillo v. Industrial Commission,* 42 *Colo.App.* 401, 594 *P.* 2d 1065 (1979), construing the Colorado statute and relied on by the State, otherwise holds, we disagree with its conclusion. And *cf. Denver Post v. Dept. of Labor and Emp.,* 199 *Colo.* 466, 610 *P.*2d 1075 (Sup.Ct.Col.1980), suggesting a definition of partial employment in terms of remuneration alone.