573 A.2d 517
MONICA MERKEL AND BOARD OF REVIEW, RESPONDENTS,
v. HIP OF NEW JERSEY, APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 12, 1990—Decided May 1, 1990.

Before Judges SKILLMAN and FOLLENDER.

*Laurence Reich* argued the cause for appellant (*Carpenter, Bennett & Morrissey,* attorneys; *Laurence Reich,* of counsel and *Jane Andrews Lalli,* on the brief).

*Michael S. Bokar,* Deputy Attorney General, argued the cause for respondent Board of Review (*Robert J. Del Tufo,* Attorney General, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel; *Michael S. Bokar,* on the brief).

No brief was filed on behalf of respondent Merkel.

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The issue presented by this appeal is whether an employee who voluntarily quits a part-time second job and is subsequently involuntarily terminated from her full-time primary job is disqualified from receiving unemployment compensation benefits because she has "left work voluntarily without good cause attributable to such work" within the intent of *N.J.S.A.* 43:21–5(a). We hold that an employee is not disqualified from receiving unemployment compensation under these circumstances and therefore affirm the Board of Review's decision upholding the award of compensation benefits to respondent Merkel.

Merkel was a full-time employee of Crossroads Program Corporation (Crossroads) from January 1984 until her discharge on September 14, 1988. During a portion of the time she was employed by Crossroads, Merkel also was employed by HIP of New Jersey (HIP) for approximately 22 hours per week. Merkel became exhausted from working more than 60 hours per week in the two jobs and concluded that her second job was having an adverse impact upon her health. Consequently, she quit her job at HIP on August 27, 1988. Two and a half weeks later, Crossroads involuntarily terminated Merkel.

Merkel then applied for unemployment compensation benefits. A local claims office of the Division of Unemployment and Disability Insurance awarded her benefits. HIP appealed this determination to the Appeal Tribunal.

Following a hearing, the Appeal Tribunal issued a decision affirming the determination of the local office. It found that there was no evidence that Merkel's discharge by Crossroads was for misconduct connected with the work and consequently she was not disqualified from receiving benefits pursuant to *N.J.S.A.* 43:21–5(b). It also found that Merkel was unaware when she voluntarily quit her part-time job with HIP that she

was going to be discharged by Crossroads. The Appeal Tribunal concluded that Merkel was not disqualified from receiving unemployment compensation benefits under these circumstances:

> It is not the intent of the New Jersey Unemployment Compensation Law to deny benefits to a claimant who leaves a part-time job during a time she is employed elsewhere on a full-time job when she has no expectation that the regular employment is about to end. The purpose of that law is to pay those workers who are involuntarily unemployed. The basic reason the claimant was forced into the ranks of the unemployed was her discharge from [Crossroads] and not because she gave up her supplementary job with [HIP].

On a further administrative appeal by HIP, the Board of Review affirmed for the reasons expressed by the Appeal Tribunal.

This appeal turns on an interpretation of *N.J.S.A.* 43:21–5(a), which states in pertinent part:

> An individual shall be disqualified for benefits:
>
> (a) For the week in which the individual has left work voluntarily without good cause *attributable to such work*, and for each week thereafter until the individual becomes reemployed and works four weeks in employment ... and has earned in employment at least six times the individual's weekly benefit rate.... (Emphasis added).

HIP argues that because Merkel left her job with HIP voluntarily without good cause attributable to that job and was terminated by Crossroads before she earned an additional six times her weekly benefit rate in that employment, she was disqualified pursuant to *N.J.S.A.* 43:21–5(a). The Appeal Tribunal and Board of Review properly rejected this interpretation of *N.J.S.A.* 43:21–5(a).

It is fundamental that individual statutory sections must be interpretated in the context of the overall legislative enactment of which they are a part. *Waterfront Com'n of N.Y. Harbor v. Mercedes–Benz*, 99 *N.J.* 402, 414, 493 *A.*2d 504 (1985); *Seatrain Lines, Inc. v. Medina*, 39 *N.J.* 222, 226–227, 188 *A.*2d 169 (1963). The threshold requirement of eligibility for unemployment compensation benefits is that an individual be "unemployed." *N.J.S.A.* 43:21–4(d). Unless that requirement is satisfied, there is no need even to consider whether an individual is

disqualified under any of the subsections of *N.J.S.A.* 43:21–5. *N.J.S.A.* 43:21–19(m)(1) provides that "an individual shall be deemed 'unemployed' for any week during which he is not engaged in full-time work and with respect to which his remuneration is less than his weekly benefit rate." *See Borromeo v. Bd. of Review,* 196 *N.J.Super.* 576, 483 *A.*2d 833 (App.Div.1984) Since Merkel remained employed full time at Crossroads after she quit her job at HIP on August 27, 1988, it is clear she was not "unemployed" at that time and hence she was not eligible for unemployment compensation benefits. She did not become "unemployed" within the intent of *N.J.S.A.* 43:21–19(m)(1) and thus did not satisfy the threshold requirement for eligibility under *N.J.S.A.* 43:21–4(d) until she was discharged by Crossroads on September 14, 1988. Since it is that discharge which established her basic benefit eligibility, the "work" which Merkel must have left "voluntarily without good cause attributable to such work" in order to be disqualified from benefits under *N.J.S.A.* 43:21–5(a) was the work at Crossroads. This interpretation of *N.J.S.A.* 43:21–5(a) is required in order to sensibly harmonize the disqualification provided by that section with the basic eligibility requirement of *N.J.S.A.* 43:21–4.

We also note that the disqualification provided by *N.J.S.A.* 43:21–5(a) applies to "the week in which the individual has left work" and "each week thereafter until the individual becomes *reemployed* and works four weeks in employment, ... and has earned in employment at least six times the individual's weekly benefit rate." (Emphasis added). A person who continues to be employed full time clearly has no occasion to be "reemployed." Therefore, an individual who quits a part-time job while continuing to be employed full time by another employer cannot be found to have "left work voluntarily" within the intent of *N.J.S.A.* 43:21–5(a).

This interpretation is supported by *Zielenski v. Board of Review,* 85 *N.J.Super.* 46, 203 *A.*2d 635 (App.Div.1964), a case in which a claimant left a part-time job because of the unsteadiness of the work and filed a claim for unemployment benefits.

In holding the claimant disqualified under *N.J.S.A.* 43:21–5(a), the court said that the disqualification applies "when a person gives up partial employment for none at all," 85 *N.J.Super.* at 53, 203 *A.*2d 635, thus "voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." *Id.* at 52, 203 *A.*2d 635; citations omitted. By parallel reasoning, the disqualification does not apply where, as here, a claimant who leaves a part-time job does not "join the ranks of the unemployed" but rather devotes herself to an existing full-time job.

The circumstances of this case are similar in some respects to those in *Wojcik v. Bd. of Review*, 58 *N.J.* 341, 277 *A.*2d 529 (1971), where an unemployed individual first accepted employment which was "unsuitable," because it involved a substantial reduction from his prior income and was inconsistent with his training and experience, but later voluntarily terminated that employment because he was unable to cope with the work. In holding that the employee was not disqualified from receiving unemployment compensation benefits, the Court said:

> A contrary result would inhibit persons who are temporarily unemployed from taking work which, although not commensurate with their former employment, is nevertheless gainful activity which serves the general public interest.... We do not believe a person should be penalized for so laudable an effort.... They should be given a reasonable time to measure their ability to cope with their new work, and to reapply for benefits if they cannot. [58 *N.J.* at 345–346, 277 *A.*2d 529].

Similarly, an employee who demonstrates extraordinary diligence by working two jobs, one part-time and one full-time, but subsequently quits the secondary job because it is too difficult to continue both, should not be penalized for her laudable effort to hold two jobs.

Affirmed.